### IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF GEORGIA ATHENS DIVISION

| | | |
|---|---|---|
| BRADFORD HUFF, SR., | ] | |
| Plaintiff | ] | Civil Action No. |
| vs. | | _____ |
| | ] | |
| | | Jury Trial Demanded |
| WALTON COUNTY | ] | |
| GEORGIA and the PERSONNEL APPEALS BOARD OF WALTON COUNTY GEORGIA, in its official capacity, | | |
| | ] | |
| Defendants | ] | |
| _____ | ] | |

## COMPLAINT

COMES NOW, Plaintiff Bradford Huff, Sr. and respectfully shows the Court as follows:

## INTRODUCTION

A long-standing employee of over fifteen years with Walton County, Plaintiff Bradford Huff, Sr. ("Plaintiff" or "Mr. Huff"), Athletic Division Manager for Walton County, was illegally and retaliatorily fired for exercising his basic First Amendment rights to clear his name through a civil law suit, by notifying Walton County (the "Defendant" or "County") of his claims through a statutorily protected procedure for notice of claims under Georgia law, and for asking for

clarification and investigation of potential violations of the law and potential violations of the standards of the Peace Officers Standards and Training Council ("POST"). Mr. Huff was terminated in violation of his First Amendment rights, his whistleblower protection rights under O.C.G.A. § 45-1-4, et seq., his equal protection rights, his property and contractual rights under the Civil Service System, and his other related constitutional, statutory, and legal rights. Plaintiff seeks declaratory and injunctive relief, compensatory damages, attorneys' fees and costs for the Defendant's unlawful actions.

## JURISDICTION AND VENUE

### 1.

Plaintiff's claims arise under the First and Fourteenth Amendments to the United States Constitution, as made actionable by 42 U.S.C. § 1983. Plaintiff's claims are related to violations of free speech, equal protection rights, due process rights, property rights, contract rights, and whistleblower protection rights. Plaintiff's claims present federal questions over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a).

### 2.

Plaintiff's state law claims, including violations of Georgia's public whistleblower statute, O.C.G.A. § 45-1-4, et seq., are subject to the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

3.

This Court is a proper venue for Plaintiffs' claims under 28 U.S.C. § 1391(b), because the parties are domiciled in the Middle District of Georgia and because the unlawful conduct giving rise to Plaintiffs' claims occurred in this District.

## FACTS AND CLAIMS

4.

This Complaint is brought against Walton County, Georgia and the Personnel Appeals Board of Walton County, in their official capacity. Defendant Walton County is a political subdivision organized under the laws of the State of Georgia, and Defendant Personnel Appeals Board is organized and authorized pursuant to the ordinances of Walton County. Defendant Walton County, Georgia and Defendant Personnel Appeals Board are therefore, subject to the Court's Jurisdiction, and may be served with process by serving the Walton County Board of Commissioners Chair, Kevin Little, and the Clerk of the Superior Court of Walton County, Karen P. David, respectively, at 303 South Hammond Drive, Suite 330, Monroe, Georgia 30655.

5.

For over fifteen (15) years, Bradford Huff, Sr., known as Brad, was a valued and decorated member of Walton County's employment team.  He was the Athletic Division Manager of Walton County prior to being terminated.

6.

On October 28, 2019 Walton County and the Personnel Appeals Board of Walton County did enforce the termination of Brad Huff from his employment with Walton County in his position as Athletic Division Manager of Walton County.

A.    **FACTS RELATED TO 2017 LAWSUIT AND NOTICE OF CLAIM**

7.

In 2017, Mr. Huff and John Johnson, Jr. filed a civil lawsuit (the "2017 Lawsuit") against five individuals, all in their individual capacity, in the Superior Court of Walton County, Civil Action No. 17-1091-3.

8.

Walton County was not named in the 2017 lawsuit.

9.

One of the individual defendants in the 2017 Lawsuit, Lee Bradford, was at the time and currently is, a sitting Commissioner of Walton County, but he was sued only in his personal individual capacity.

10.

The 2017 Lawsuit was amended on December 14, 2017.

11.

The 2017 Lawsuit was filed to clear the names of Brad Huff, Jon Johnson, and their company JB Athletics, LLC ("JB Athletics",) who had been subject to false and published statements by the defendant individuals in that case.

12.

Mr. Huff and Mr. Johnson had been referred to by one or more of the defendant individuals as "crooked" and "corrupt."  These statements were false and published.

13.

In another statement, one or more of the defendant individuals referred to Mr. Huff and Mr. Johnson as being a part of the department that is full of "corruption and criminals." These statements were also false and published.

14.

One or more of these defendant individuals referred to Mr. Huff and Mr. Johnson as being "involved in a kickback scheme with the Chairman of the County Commission."  These comments were also false and published.

15.

One or more of these defendant individuals referred to Mr. Huff, Mr. Johnson, and JB Athletics as having an "illegal" business.  These comments were also false and published.

16.

One or more of the defendant individuals in the 2017 Lawsuit accused Mr. Johnson, Mr. Huff, and JB Athletics of "taking money from the citizens of Walton County."  This statement was also false and published.

17.

One or more of the defendant individuals in the 2017 Lawsuit referenced John Johnson, Brad Huff, and JB Athletics as having "committed a criminal act." These statements were also false and published.

18.

One or more of the defendant individuals in the 2017 Lawsuit stated that Mr. Johnson, Mr. Huff, and JB Athletics "owed the taxpayers $300,000.00 to $400,000.00 a year."  These statements were also false and published.

19.

The above statements were in addition to other false and published statements made by one or more of the defendant individuals in the 2017 Lawsuit. Those additional statements were false and published.

20.

Mr. Johnson, Plaintiff Huff, and JB Athletics had every legal right to file a
lawsuit in an attempt to clear their names and to stop the publishing of false
statements under the First Amendment of the United States Constitution, the
Georgia Constitution, as well as under related Georgia statutory law.

21.

The 2017 Lawsuit and the amendment thereto were written and drafted by
the Ken Hodges Law office.  None of the paragraphs were written by Mr. Huff.

22.

Upon information and belief, prior to filing the 2017 lawsuit, the attorneys
for Mr. Huff, Mr. Johnson, and JB Athletics wrote a Notice of Claims letter to
Walton County to satisfy a state statutory provision. Whether this notice was
required or not as it related to the 2017 Lawsuit is immaterial under the present
lawsuit, but the Plaintiffs' attorney decided it was the proper measure to take out of
an abundance of caution.

23.

The Notice of Claims was sent by Ken Hodges Law on January 31, 2017 to
Chairman Kevin Little of the Walton County Board of Commissioners pursuant to
O.C.G.A. § 36-11-1.

24.

The Notice of Claim was signed by the then plaintiffs' attorney in the 2017
Lawsuit but not by Mr. Huff.

25.

Surprisingly and shockingly, in violation of the First Amendment of the
United States Constitution and related laws under the Georgia Constitution and 42
U.S.C. § 1983, Walton County informed Mr. Huff that he and Mr. Johnson would
be terminated if they filed a Complaint against Walton County in early 2017.

26.

While clearly within his legal right to do so, Mr. Huff did not file an action
against Walton County, Georgia in 2017 or thereafter while employed by Walton
County.

27.

During or around the time of the 2017 Lawsuit, the District Attorney of
Walton County and the FBI investigated a complaint against the 2017 Lawsuit
plaintiffs made by one or more of the 2017 defendant individuals and found no
evidence of wrongdoing on the part of Mr. Huff, Mr. Johnson, or JB Athletics.

28.

District Attorney Layla Zon stated in her letter of August 25, 2016 to the
County Commissioners, "After a thorough review of the Complaint, the materials

provided in support of the Complaint, and applicable law, I have determined that there is no evidence of any criminal violation of Georgia statutes."

29.

Despite the above-referenced investigation and findings clearing Mr. Huff, Mr. Johnson, and JB Athletics of any wrongdoing in 2016 by law enforcement, and despite the 2017 Lawsuit plaintiffs' demands for retraction of the false and published statements by the 2017 Lawsuit defendant individuals, these five individuals continued to disparage and publish false statements about Mr. Huff and others.

30.

In a clear violation of his First Amendment rights, the County and Personnel Appeals Board terminated Mr. Huff for "reflecting discredit upon the County as evidenced by the lawsuit."

31.

The County and Personnel Appeals Board were unable to find any other individual who had ever been disciplined or terminated as a result of sending a Notice of Claim letter to the County pursuant to state statute or as a result of filing a lawsuit against individuals by an attorney for those parties.

32.

A substantial factor in the termination of Mr. Huff was the filing of the 2017 Lawsuit to clear his name of the above-described false and published statements.

33.

A substantial factor in the termination of Mr. Huff was the sending of the Notice of Claim letter by his attorney.

34.

Mr. Huff's termination took place in 2019, approximately two years after the initial filing of the 2017 Lawsuit and shortly following its dismissal based on a portion of technical defense related to strategic lawsuits against public participation (SLAPP) provisions.

35.

Strangely, the County believes that it can retaliatorily terminate an individual for utilizing his First Amendment rights in this manner.

36.

Despite being involved in the 2017 Lawsuit, Mr. Johnson was not terminated. He was a similarly situated individual who did not face termination. The equal protection rights of Mr. Huff were violated as a result.

37.

Also, no other individual who has been similarly situated has been terminated by the County as a result of filing a lawsuit or serving a Notice of Claim letter, making any and all individuals subject to discipline being similarly situated for equal protection rights.  Further discovery concerning similarly situated individuals will allow for the Plaintiff to designate additional comparators.

**B.    FACTS RELATED TO REQUESTS FOR INFORMATION, DETERMINATIONS AND INVESTIGATION BY POST**

38.

The Peace Officers Standards and Training Council is a government agency for the State of Georgia, also known as POST.

39.

POST reviews complaints and investigates and disciplines certified peace officers and exempt peace officers for any violations of its standards.

40.

Some of the standards for which POST is required to investigate, review, take complaints, and impose discipline and certification removal or suspension include any and all of the following:

1.    To determine if a peace officer met their requirements of this chapter and is qualified to be employed as a peace officer and issued a certificate to those qualified.

2.    To determine if the officer knowingly made deceptive, misleading or untrue or fraudulent representations in the practice of being an officer.

3.    To determine if the officer committed a crime involving moral turpitude.

4.    To determine if the officer engaged in any unprofessional, unethical, deceptive or deleterious conduct or practice harmful to the public; such conduct or practice need not have resulted in actual injury.

5.    To determine if the officer violated or attempted to violate a law, rule or regulation of the State.

6.    To determine if the officer committed any act or omission which is indicative of bad moral character or untrustworthy.

7.    To determine if the officer has been suspended or discharged for disciplinary reasons.

41.

POST standards exist to protect citizens from peace officers such as Sheriffs who may abuse their office or power. The POST standards require compliance of

peace officers to POST standard to maintain their certifications and law
enforcement powers in the State of Georgia.

42.

On January 25, 2018, Mr. Huff, as a private citizen, sent an email to POST
on behalf of Walton County residents asking about the outcome of the POST
council's investigation of Sheriff Joe Chapman. Mr. Huff asked for clarifications
and updates from POST regarding the pending investigation and related to
determining whether there had been unlawful searches and seizures.

43.

Within that email, Mr. Huff asked POST about potential violations of the
Fourth Amendment of the United States Constitution.

44.

Also, within that email, Mr. Huff asked POST about statements made by
Sheriff Joe Chapman that accused Mr. Huff of allegedly paying kickbacks to
Chairman Kevin Little, which was false and stigmatizing. Within that
communication to Mr. Little, Mr. Huff asked about potential abuses by the Sheriff
of the Commission Chair's office and about intimidation of citizens, including but
not limited to, intimidation of Chairman Little by the Sheriff through the abusive
use of his office.  Also, Mr. Huff asked about determining whether or not the

Sheriff was using investigatory information in the media to smear citizens with false statements.

45.

Each of the above issues raised in Mr. Huff's January 25, 2018 email constitutes grounds under O.C.G.A. § 35-8-7.1 for which POST may investigate, may make determinations, may notify citizens, may clarify jurisdiction or may respond to complaints from any and all citizens.

46.

Prior to upholding the termination of Plaintiff Huff, the County admitted that each of the above-described issues raised in Mr. Huff's January 25 email are matters of public concern and proper for review and determination by POST.

47.

The January 25, 2018 communication was a protected communication under the First Amendment of the United States Constitution, and the subsequent and retaliatory actions of the Defendants have jeopardized and infringed upon Mr. Huff's constitutional rights.

48.

The January 25 communication constitutes a whistleblower protected communication under Georgia's Whistleblower Protection Act.

49.

On February 28, 2018 Plaintiff Huff sent another email to POST while being on bereavement leave due to the death of his mother.

50.

Once again, Mr. Huff addressed POST as a citizen.

51.

Once again, Mr. Huff was trying to protect citizens of Walton County, including Chairman Little and his family, and Mr. Huff was concerned about potential improper and retaliatory actions by the Sheriff in relation to Chairman Little and his children who drive automobiles within Walton County.

52.

Walton County or its insurer or risk pool carrier did pay a significant sum on behalf of Walton County to settle the Renee Jones case.

53.

Chairman Little conveyed his concern about the actions for which a significant sum was paid by insurance or by the risk pool carrier as a result of the Sheriff or his department's conduct relating to the settlement.

54.

The Sheriff and the County have a history and custom and practice of infringing upon the First Amendment rights of citizens and employees of Walton

County.  The Sheriff and County have a custom and practice of intimidating and retaliating against citizens for voicing their opinions under their First Amendment, whether such opinions and statements are made for investigatory purposes, complaining about a matter of public concern, or in an attempt gain action to protect citizens.

55.

Plaintiff Huff also complained to POST to try and gain a determination as to whether or not there were further violations of the law and on the status of pending investigation.  Plaintiff Huff was attempting to ask POST to determine if the Sheriff or its office did allow for the taking of County property without going through proper bidding procedures as required by State law.

56.

Mr. Huff is not a law enforcement officer. He is a citizen, which is the reason he was addressing POST for clarification, determination and, if needed, investigation.

57.

During the Personnel Advisory Board hearing, the County admitted that requesting clarification, determination or investigation of the above acts, whether correct or incorrect, were proper to go to POST.  In addition, the County admitted that these matters are of grave public concern or are matters of public concern.

58.

The County placed emphasis on the fact that a county email address was used for the two emails in question.

59.

However, the County admitted that county employees have often used county emails for personal use but for nothing as important as to determine whether or not a county sheriff may be putting citizens or elected officials in danger, for violating constitutional rights or for potentially not enforcing the law.

60.

Each of the individuals who utilize county emails for personal purposes would be similarly situated employees to Mr. Huff and would constitute comparators for equal protection violations.

61.

The Commissioners of Walton County themselves would constitute comparators as well as other employees to Plaintiff Huff, as they have utilized their county emails for personal use without being terminated.

62.

Similarly, Human Resources Manager Karen Fraser would also be a similarly situated employee, as would many other employees who have used their

emails for personal use and were not terminated as a result of utilizing emails for personal use.

66.

Similarly, Jon Johnson would be another similarly situated individual who has used his email for personal use, was involved in the subject incidents and would be a comparator for equal protection purposes and was not terminated.

67.

Other department heads, second in commands and managers would also be comparators for equal protection violations for using emails for personal use without being terminated.

C.    **FACTS RELATING TO PROPERTY RIGHTS VIOLATIONS, CONTRACT RIGHTS VIOLATIONS AND ADDITIONAL EQUAL PROTECTION RIGHTS VIOLATIONS IN RELATION TO THE CIVIL SERVICE SYSTEM OF THE COUNTY**

68.

Plaintiff Huff was a civil service protected employee during his time at Walton County, including the time for when he was terminated.

69.

The Civil Service System states that the employee should not be subject to political considerations. However, the County maintains the custom and practice of

using political considerations to violate the Civil Service System including but not limited to when it terminated the Plaintiff.

70.

Despite the aforesaid, the Civil Service System states under Section 500, provision 5 under Dismissal With Cause that "An employee may be dismissed for disciplinary reasons when all other alternatives have failed to solve the problem."

71.

In the present case, no other alternatives of disciple were attempted.  No oral counseling occurred.  No additional training occurred.  No written reprimand occurred.  No attempt to suspend occurred.  No attempt at any alternative or discipline occurred for this decorated over-fifteen-year employee, Mr. Huff.

72.

The County did violate the civil service and contract rights of Plaintiff Huff pursuant to the Civil Service System.

73.

The County did violate the whistleblower protection laws of the State of Georgia, federal law and county ordinances related to whistleblower complaints. The communications of Plaintiff Huff to POST would constitute protected whistleblower complaints for which the County violated O.C.G.A. § 45-1-4 and any applicable county ordinance, under which these claims would be brought

under both the statute and the ordinance.  Walton County retaliated against public

employee Huff for disclosing a violation or non-compliance of a law, rule or

regulation to a government agency.

74.

There was no reckless disregard for the truth or falsity, as the information

was learned from credible third sources, including but not limited to, Chairman

Kevin Little, the Chairman of the County Commission. In addition, the information

was communicated for purposes of determination, investigation and information

gathering, none of which were being pursued for reckless reasons but for the safety

of Walton county citizens and all citizens who come in contact with law

enforcement services.

75.

The County has imposed an official policy regarding "discredit to the

county" as a basis for termination, which prevents a public employee from

disclosing a violation or potential violation or non-compliance with a law, rule or

regulation to a government agency, including but not limited to POST.

76.

In addition, the Plaintiff had reasonable cause to believe that there was a

violation of law, rule or regulation by the Sheriff, and it was proper for him to

report such request for determination, clarification, information and investigation

to POST.  The county did improperly terminate Mr. Huff in retaliation for doing so, which it admitted was a substantial factor in his termination.

77.

All grounds of O.C.G.A. § 45-1-4(d)(1) are independent bases for whistleblower protection act protections.

## CAUSES OF ACTION

COUNT I

42 U.S.C. § 1983 Allegations

(First Amendment Retaliation Against Plaintiff)

(All aforesaid paragraphs are incorporated herein.)

78.

Mr. Huff incorporates all prior allegations herein and incorporates all below allegations herein also. Mr. Huff had a constitutional right to exercise his First Amendment right to speak on matters of public concern pursuant to the First and Fourteenth Amendments to the United States Constitution.

79.

Mr. Huff also had a constitutional right to exercise his First Amendment right to petition the courts for redress pursuant to the First and Fourteenth Amendments to the United States Constitution.

80.

The sending of a Notice of Claim letter to the County and the filing of the 2017 Lawsuit to clear his name of the false, published statements made by the defendant individuals in the 2017 Lawsuit are rights of the Plaintiff under the Constitution upon which the Defendants trampled and chilled the exercise of first amendment rights by citizens including but not limited to the Plaintiff. The termination of the Plaintiff by the Defendants was in retaliation for the exercise of the Plaintiffs' constitutional rights including but not limited to his exercise of first amendment and due process rights.

81.

Mr. Huff also properly exercised his constitutional rights as a private citizen by sending emails to the Peace Officers Standards and Training Council asking for clarification, determination and investigation of potential violations of law and potential violations of the standards of POST.

82.

Plaintiff Huff's speech was related to matters of public concern.

83.

Following Mr. Huff's proper execution of his constitutional rights of free speech and his right to petition for redress as a private citizen, Defendants terminated Mr. Huff's employment with Walton County.

84.

Defendants' actions in terminating Mr. Huff's employment of fifteen years with Walton County caused Mr. Huff to suffer an injury that would likely chill a person or ordinary firmness from engaging in constitutionally protected speech. The termination was stigmatizing in nature also and damaging to the reputation of the Plaintiff and evoked damaged feelings and emotional loss.

85.

Plaintiff Huff's proper execution of his constitutional rights was the motivating factor behind the Defendants adverse and unlawful action.

86.

Plaintiff Huff has been irreparably harmed by Defendants' unlawful, retaliatory actions.

87.

As a direct and proximate result of the Defendants' actions, Plaintiff Huff suffered damages including economic loss, emotional distress, mental anguish, inconvenience, loss of income and benefits, humiliation, and other indignities.

88.

Plaintiff Huff prays for compensatory damages without limits and any and all other damages allowed by law, attorneys' fees, expert fees, costs, per se damages, and pre-judgment and post-judgment interest.

COUNT II

42 U.S.C. § 1983 Allegations

(Denial of Equal Protection Claim against All Defendants)

(All aforesaid paragraphs are incorporated herein.)

89.

Mr. Huff incorporates all prior allegations herein and incorporates all below allegations herein also. The Equal Protection Clause of the Fourteenth Amendment to the United States and Georgia Constitution entitles Plaintiff to equal protection and equal treatment under the law. Defendants violated Plaintiffs' rights to equal protection by, among other things, subjecting Plaintiff to discriminatory and disparate treatment not otherwise imposed on similarly situated persons.

90.

More particularly, numerous County employees, similarly situated to Mr. Huff, frequently utilized County email for personal purposes, but none of these similarly situated persons were subject to Defendants' unlawful, adverse, and

retaliatory actions as a result, as Mr. Huff was. Each of these similarly situated employees constitutes a comparator.

91.

Moreover, like Mr. Huff, Mr. Johnson was a plaintiff to the 2017 Lawsuit; however, Mr. Johnson was not terminated by the County for his involvement in the 2017 Lawsuit, and he was not subject to Defendants' unlawful, adverse, and retaliatory actions as a result of his involvement, as Mr. Huff was. Mr. Johnson was similarly situated to Mr. Huff at the time of Mr. Huff's termination, and as such, Mr. Johnson constitutes a comparator.

91.

No employee of Walton County other than Mr. Huff has even been terminated or disciplined by the County for filing a lawsuit or serving a Notice of Claim letter. Each of these similarly situated employees constitutes a comparator. Similarly, other similarly situated employees may have reported potential violations or violations of the law or standards to a government agency or to the County without being terminated.

92.

Defendants had no rational basis for any of the denials or rejections of permits to which Plaintiffs were legally entitled. Plaintiffs had legally protected property rights in and to related business permits to which he was legally entitled.

93.

At all times relevant hereto, the law was clearly established that Defendants' actions violated the equal protection clause of the Fourteenth Amendment to the United States Constitution.

94.

Defendants undertook all of the unlawful conduct giving rise to the Plaintiffs' claims while acting under color of State and local law.

95.

All of Defendants' discriminatory and retaliatory conduct described herein were accomplished pursuant to official policy and custom of the County or was committed or authorized by officials whose acts can be fairly deemed to be the actions and official policy and customs of the County.

96.

The Defendants failed to train their employees and officials from violating the law in this manner. The Defendants and their employees and officials were deliberately indifferent to the rights of the Plaintiff Huff.

97.

Plaintiff has been irreparably harmed by Defendants' unlawful, actions.

98.

Defendants acted intentionally and with callous disregard for Plaintiff's known statutory and constitutional rights.

100.

As a direct and proximate result of Defendants' actions Plaintiff has been deprived of rights to which he was entitled and suffered loss of income and revenue as a result thereof.

101.

Plaintiff has been irreparably harmed by Defendants' unlawful, retaliatory, and disparate actions.

102.

As a direct and proximate result of the Defendants' actions, Plaintiff Huff suffered damages including financial damage, emotional distress, mental anguish, inconvenience, loss of income and benefits, humiliation, and other indignities.

103.

Plaintiff prays for compensatory damages and all applicable damages, attorneys' fees, expert fees, costs, per se damages, and pre-judgment and post-judgment interest.

COUNT III.

Whistleblower Protection Act Violations

(All aforesaid paragraphs are incorporated herein)

104.

The Defendants did violate the Whistleblower Protection Act of Georgia and any applicable federal laws and county ordinances applicable to such violations.

105.

The Defendants did proximately cause damages to the Plaintiff including but not limited to compensatory damages, nominal damages, attorneys' fees, costs, back pay, pre-judgment and post judgment interest and all damages allowed by law. The Plaintiff prays for the aforesaid.

COUNT IV.

Property Rights Violations

(All aforesaid paragraphs are incorporated herein)

106.

The Defendants did violate the property rights of the Plaintiff as vested under the civil service system and the property rights vested under county ordinance and policies. The rights are vested for the Plaintiff and violated under color of law by the Defendants in violation of 42 USC 1983.

107.

The Defendants did proximately cause damages to the Plaintiff including but not limited to compensatory damages, nominal damages, attorneys' fees, costs, back pay, pre-judgment and post judgment interest and all damages allowed by law. The Plaintiff prays for the aforesaid.

COUNT V.

Breach of Contract Violations

(All aforesaid paragraphs are incorporated herein.)

108.

The Defendants did violate the contract rights of the Plaintiff as vested under the civil service system and under county ordinance and policies. The contract rights are vested for the Plaintiff and violated by the Defendants.

109.

The Defendants did proximately cause damages to the Plaintiff including but not limited to compensatory damages, nominal damages, breach damages, attorneys' fees, costs, back pay, pre-judgment and post judgment interest and all damages allowed by law. The Plaintiff prays for the aforesaid.

**<u>PRAYER FOR RELIEF</u>**

Plaintiff respectfully request the following relief:

a) Injunctive relief permanently prohibiting the Defendants from engaging in such unlawful conduct in the future;

b) For appropriate compensatory damages in an amount to be determined at trial, including but not limited to general and nominal damages;

c) For all other damages as allowed by law;

d) For appropriate relief and damages against all Defendants as allowed by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, including the enjoining and permanent restraining of these violations, and direction to Defendants to take such affirmative action as is necessary to ensure that the effects of the unconstitutional and unlawful practices are eliminated and do not continue to affect Plaintiff, or others;

e) For an award of reasonable attorney's fees and costs expended pursuant to the Civil Rights Act of 1871, 42 U.S.C. Section 1988;

f) For an award of pre-judgment and post-judgment interest;

g) For such other and further relief to which Plaintiffs may show themselves justly entitled; and

h) Such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES

SO TRIABLE.

Respectfully submitted this 18th day of May, 2020.

{Signatures on the following page}

*Counsel for Plaintiff:*

/s/ Greg K. Hecht
Greg K. Hecht
Ga. Bar No. 003860
greg@hmhwlaw.com

Michael W. Warner
Ga. Bar No. 751362
michael@hmhwlaw.com

Hecht Walker, P.C.
205 Corporate Center Suite B
Stockbridge, Georgia 30281
Phone: 404-348-4881
Fax: 678-884-1257