IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

BRADFORD HUFF,                    *

     Plaintiff,                   *

vs.                               *          CASE NO. 3:20-CV-57 (CDL)

WALTON COUNTY,                    *

     Defendant.                   *

_____

O R D E R

Bradford Huff alleges that Walton County fired him from his job because he engaged in conduct protected by the First Amendment. The Court previously granted in part and denied in part Walton County's motion for summary judgment on that claim and a related claim under the Georgia Whistleblower Act. The Court concluded that Huff's February 28, 2018 email to the Georgia Peace Officer Standards and Training Council—the "second POST email"—was not protected speech. *Huff v. Walton Cnty.*, No. 3:20-CV-57 (CDL), 2022 WL 4110309, at *8 (M.D. Ga. Sept. 8, 2022). Huff filed a motion for reconsideration of that decision. The motion (ECF No. 79) is denied.

MOTION FOR RECONSIDERATION STANDARD

Local Rule 7.6 provides that motions for reconsideration shall not be filed as a matter of routine practice. M.D. Ga. R. 7.6. Generally, such motions will only be granted if the movant

demonstrates that (1) there was an intervening development or change in controlling law, (2) new evidence has been discovered, or (3) the court made a clear error of law or fact. *Rhodes v. MacDonald*, 670 F. Supp. 2d 1363, 1378 (M.D. Ga. 2009).

DISCUSSION

In its previous ruling granting summary judgment, the Court struck Huff's revised statement of material facts for failing to comply with the Court's local rules and declined to consider it in ruling on the summary judgment motion. *Huff*, 2022 WL 4110309, at *1 n.1. Huff contends that it was error for the Court to strike his revised statement of facts and that if the Court had considered certain paragraphs, it would have concluded that the second POST email was protected speech. Pl.'s Br. in Supp. Mot. Reconsid. 6, ECF No. 79-1. Even if the Court considered the facts that Huff now points to in support of his motion for reconsideration, he has still failed to create a genuine fact dispute. The second POST email was not protected speech.

In the second POST email, Huff reported to a Georgia POST representative that he had "suffer[ed] at the hands of Sheriff [Joe] Chapman's abusive political tactics." Defs.' Mot. for Summ. J. Ex. Q, Email from B. Huff to K. Vance (Feb. 28, 2018, 11:18 AM), ECF No. 44-17 ("2d POST Email"). As an example of Chapman's alleged abusive tactics, Huff explained that Walton

2

County Board of Commissioners chairman Kevin Little "expressed a deep concern for his four children that drive automobiles in Walton County and feared that with Chapman's past drug planting tactics (the Ms. Jones Case) that all it would take was Sheriff Joe to give his orders again." *Id.* As the Court previously observed, Huff did not provide any specifics of the Jones case in his second POST email, and he did not state in the email that he had any personal knowledge of the case.

There is no dispute that Little told Huff that he was worried that Chapman would plant drugs in his car or his children's cars, and Little "referenced the Renee Jones case" to explain the basis for this fear to Huff. Huff Decl. ¶ 24, ECF No. 61-8 (cited in Huff Revised Statement of Material Facts ¶¶ 57-58, ECF No. 71-1 hereinafter "Huff Rev. SMF").[1] Huff asserts that Little's concern was partly due to the Jones case and "partly in relation to what a retired deputy had told him about a staged arrest." Huff Rev. SMF ¶ 58. But the evidence Huff cited does not describe the "staged arrest" incident or state that Little told Huff anything about it. Rather, the cited evidence only states that Little "referenced the Renee Jones case" when he described the sheriff's alleged drug planting tactics. *E.g.,* Huff Decl. ¶ 24.

---

[1] Huff also cited paragraphs 48 and 49 of Little's declaration to support this fact statement, but the declaration in the record does not contain a paragraph 48 or 49. *See* Little Decl., Mar. 22, 2022, ECF No. 61-9.

The "Renee Jones case" refers to a 2015 incident where a deputy sheriff allegedly directed a confidential informant to plant drugs in Ms. Jones's car.  Chapman Dep. 104:5-16, ECF No. 53; *accord* Compl. ¶¶ 52-53, ECF No. 1 in *Jones v. Barrett* 3:17-cv-13 (M.D. Ga. Jan. 24, 2017).  Because the *Jones* case was filed in this Court, the Court took judicial notice of the complaint and the proceedings in that action.  The Court explained in its summary judgment order in this case that the *Jones* action "was filed more than a year before Huff sent the second POST email, [and] sought damages against four sheriff's office employees in their individual capacities based on Ms. Jones's assertion that one of them instructed a confidential informant to plant drugs in her car."  *Huff*, 2022 WL 4110309, at *8.  The Court further noted: "Chapman was not a defendant in that action, was not alleged to have planted any drugs, and was not alleged to have supervisory liability for any of Ms. Jones's claims."  *Id.*  The Court also observed that "Huff did not clearly point to evidence that he had a factual basis for alleging that Chapman engaged in drug planting tactics."  *Id.* The Court understood that Huff pointed out that *after* the Court in *Jones* issued an order denying summary judgment only as to the deputy who allegedly planted the drugs, the *Jones* action settled.  *Id.* at *8 n.10.  But the summary judgment order in *Jones* was not issued until March 19, 2018—after Huff sent the

second POST email on February 28, 2018. Order, ECF No. 67 in
*Jones*, 3:17-cv-13 (M.D. Ga. Mar. 19, 2018). For all these
reasons, the Court in its previous order granting summary
judgment in this case concluded that nothing about the *Jones*
case suggested that *Chapman* engaged in drug planting tactics, so
Huff's statement alleging such tactics was false and made with
at least reckless disregard for the truth.

Huff's revised statement of material facts does not add
anything to substantiate Huff's statement that Chapman engaged
in drug planting tactics. Most of the evidence Huff relies on
in his revised statement of material facts references Little's
report that Chapman engaged in drug planting tactics in the
*Jones* case; again, there was no allegation that Chapman was
involved in the alleged drug planting. Huff points out that
when Little was later asked about his concerns related to the
Renee Jones case, Little stated, "I had heard about that. I
didn't know the details, but I was just always concerned[.]"
Defs.' Mot. Summ. J. Ex. I, Personnel Advisory Bd. Hr'g Tr.
250:1, ECF No. 44-9. If anything, the evidence cited in Huff's
revised statement of facts bolsters the Court's conclusion in
its earlier summary judgment order that Little relayed to Huff a
false rumor that Chapman engaged in drug planting tactics in the
*Jones* case, which Huff parroted in his second POST email without
any consideration of whether Little, who was in a self-described

political war with Chapman, was telling the truth.  Thus, the Court declines to reconsider its conclusion that Huff was recklessly indifferent to the fact that his speech on drug planting tactics was false.

Huff also argues that the Court erred when it found his statement about an alleged dirt stealing incident to have been recklessly false, and thus not protected speech.  This incident was passed along to Huff by Little who had heard about it from someone else.  In a nutshell, a contractor got permission from the county's public works director to haul dirt from Walton County property.  Huff Decl. ¶ 25.D.  In the second POST email, Huff reported that the dirt was "stolen" and that the incident "went away without any investigation."  2d POST Email 2.  In his revised statement of material facts, Huff points out that a deputy sheriff *did* investigate the incident by going to take photos after a citizen reported that the dirt was being taken.  Huff Rev. SMF ¶ 85; Brooks Dep. 10:21-11:23, ECF No. 51.  Huff also pointed to evidence that Chapman was concerned about the propriety of the arrangement because it "just don't look good, at least the perception that someone's getting something from the County."  Huff Rev. SMF ¶ 72; Chapman Dep. 76:25-77:2.  But Chapman also testified that he was "certain" that it was "okay to do all this" and that he did not "see any criminal wrongdoing if they have permission to do it."  Huff Rev. SMF ¶ 72; Chapman

Dep. 76:22-24.  Chapman further testified that "if anyone had
authority to say what could go or come, it would be" the
County's public works director who gave the contractor
permission to take the dirt.  Chapman Dep. 81:7-10.

Huff emphasizes that his declaration states that Little
told him that the "stolen property from the county property was
taken to real property belonging to" the contractor's owner.
Huff Decl. ¶ 25.G.  But this statement does not establish that
Little told Huff that the dirt was "stolen"—particularly given
Little's statement to Huff that the contractor had permission to
take the dirt.  Huff Decl. ¶ 25.D; *accord* Little Decl. ¶¶ 7-8,
Nov. 1, 2021, ECF No. 44-8 (stating that the public works
director had authority to determine whether road waste material
had value and how to dispose of it and that the public works
director told Little that he determined that the dirt was waste
material, so he gave the contractor permission to take it).  It
is undisputed that Little told Huff about the incident *and* that
Huff knew the County's public works director gave permission for
the contractor to take the dirt.  So, there is no evidence that
anyone told Huff the dirt was stolen.  Huff knew that no one
told him the dirt was stolen, which means that his statement in
the second POST email was false.

Huff now asserts that the public works director was wrong
to allow the contractor to take the dirt in light of Walton

County's bid and notification policy.  But the second POST email accuses Chapman of ignoring a *theft* of county property (while also stating that the contractor that took the property had permission to do so).  The second POST email does not mention the public works director's purported failure to follow certain county rules before granting the contractor permission to take dirt that he concluded was waste material.  Again, it is undisputed that Huff did not have first-hand knowledge of the incident, and the information he received from Little was that the contractor had permission to take the dirt.  Thus, when he sent the second POST email, Huff knew that no one told him the dirt was stolen and thus he had no factual basis to assert that the "stealing of Walton County property went away without any investigation."  2d POST Email 2.  Accordingly, the Court declines to reconsider its previous conclusion that Huff was at least recklessly indifferent to the fact that his speech on stolen dirt was false.

CONCLUSION

For the reasons set forth above, Huff's motion for reconsideration (ECF No. 79) is denied.

IT IS SO ORDERED, this 14th day of December, 2022.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA